[This opinion has been published in *Ohio Official Reports* at 74 Ohio St.3d 6.]

STARK COUNTY BAR ASSOCIATION *v*. DEPASQUALE.

[Cite as *Stark Cty. Bar Assn. v. DePasquale*, 1995-Ohio-271.]

*Attorneys at law—Misconduct—One-year suspension stayed and attorney placed on two-year probation on conditions—Neglect of an entrusted legal matter—Failure to preserve identity of client's funds—Improper use of funds in an IOLTA.*

(No. 95-1192—Submitted July 26, 1995—Decided October 24, 1995.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 94-68.

———————————

{¶ 1} In an amended complaint filed on January 30, 1995, relator, Stark County Bar Association, charged respondent, David F. DePasquale of Canton, Ohio, Attorney Registration No. 0039607, with two counts of professional misconduct involving violations of DR 6-101(A)(3) (neglect of entrusted legal matter) and 9-102 (failure to preserve identity of client's funds). Two members of a panel appointed by the Board of Commissioners on Grievances and Discipline of the Supreme Court ("board") heard the matter on April 17, 1995, at which time the parties consented to a third panel member's review of the transcript and exhibits, and relator withdrew the allegations in the second count of the complaint, as amended.

{¶ 2} The parties stipulated to the facts underlying the charged misconduct as follows:

"1. In April, 1993, [respondent] was retained by Arnold Mathess and Willie F. McCrae to provide legal services in connection with an agreed sale of the residence of McCrae on Bollinger Avenue, Canton, Ohio. Mr. McCrae's wife had died in 1988 and the real estate was in her name.

"2. [Respondent] agreed to represent the parties and provide legal services including filing probate court documents, issuing clear title to the property, and preparing and filing the Deed conveying the property to Mathess.

"3. Upon researching the property, [respondent] discovered several creditors' liens for medical bills and a tax delinquency lien.

"4. [Respondent] notified the parties of these liens and the fact that the liens totalled more than the Ten Thousand Dollar ($10,000.00) agreed * * * [upon] purchase price.

"5. [Respondent] received authority from his clients and successfully negotiated the medical creditors' liens to approximately one-half (1/2) their value.

"6. On April 23, 1993, [respondent] received from the Buyer, Mathess, the Ten Thousand Dollar ($10,000.00) purchase price.

"7. The Ten Thousand Dollars ($10,000.00) was placed in an IOLTA Trust Account entitled 'David F. Pasquale [*sic*], Atty., IOLTA Trust Account.'

"8. Various monies were disbursed from the Trust Account during this period, including a check to Seller McCrae for One Thousand Four Hundred Fifty-Five and 50/100 Dollars ($1,455.50), and attorney fees to [respondent] for One Thousand Seven Hundred Five and 50/100 ($1,705.50).

"9. Check No. 2185 in the amount of Three Thousand Dollars ($3,000.00) was made payable to [respondent] from the IOLTA Trust Account on April 27, 1993. There is no explanation for this disbursement * * *.

"10. A settlement statement was prepared by [respondent] on or about April 23, 1993 and given to the parties * * *. That statement shows disbursements to creditors. McCrae was told that receipts showing payments to creditors would be sent.

"11. McCrae moved to Alabama and applied for credit in approximately June, 1993. The creditors' liens shown on the settlement statement appeared on his

credit report. McCrae also received a bill for real estate taxes showing that the purchased property was still in his name.

"12. McCrae contacted [respondent] who told him that the bill for real estate taxes was a 'mistake,' that [respondent] had not received the receipts from the creditors yet, [and that respondent] would send them to McCrae.

"13. McCrae continued to apply for credit and the liens continued to appear on his credit report.

"14. McCrae filed a grievance with [relator] by letter dated March 10, 1994.

"15. Thereafter, a Certificate of Transfer and Entry Relieving the Estate from Administration was filed in the Stark County Probate Court by [respondent] * * *.

"16. A review of documents indicates that disbursements of the Ten Thousand Dollar ($10,000.00) purchase price were made for medical liens as follows:

| Creditor | Amount | Date |
|----------|--------|------|
| William Emley, Esq. | | |
| Aultman Hospital | $3,500.00 | 2/1/94 |
| David J. Lundgren, Esq. | | |
| North Canton Medical Clinic | 485.30 | 2/25/94 |
| Dale Kincaid, Esq. | | |
| Radiology Associates | 1,010.00 | 5/16/94 |
| John Botti, M.D. | 987.25 | 5/16/94." |

{¶ 3} In testifying before the panel, respondent acknowledged that he had failed to promptly pay the medical creditors for McCrae and to promptly transfer the purchased property to Mathess. Respondent also admitted that he improperly used for his own benefit part of the funds placed in his trust account. Accordingly, the panel found that respondent had violated DR 6-101(A)(3) and 9-102, as alleged by relator.

**{¶ 4}** In recommending a sanction for this misconduct, the panel considered respondent's genuine expression of remorse, that he had paid some of the McCrae creditors' claims and completed the real estate transfer before he learned of the instant grievance, that he had since paid the other medical claims, and that he had cooperated fully in relator's investigation. The panel also considered that respondent had been experiencing financial difficulties during the events at issue and that he had made sincere efforts to recover therefrom, including his attendance at several management seminars and his recent professional association with his wife, also an attorney. Finally, the panel considered the testimony of two Stark County attorneys, a Stark County Municipal Court Judge, and respondent's father, another Stark County attorney—all of whom attested to respondent's integrity and competence. The panel was particularly impressed with respondent's father's description of how the allegations of misconduct had affected his son.

**{¶ 5}** In *Cincinnati Bar Assn. v. Warren* (1993), 66 Ohio St.3d 334, 612 N.E.2d 1223, the court imposed a one-year suspension from the practice of law for commingling and other disciplinary infractions, but stayed this sanction on conditions. Finding this authority instructive, the panel recommended that respondent be suspended from the practice of law for one year, but that this supension period be suspended in favor of a two-year probation period on the conditions that respondent commit no further disciplinary violations and meet regularly with an attorney appointed by relator to supervise his compliance with the Disciplinary Rules. The board adopted the panel's findings and its recommendation.

————————————

*Kathleen O. Tartarsky*, for relator.

*David F. DePasquale, pro se*.

————————————

**Per Curiam.**

**{¶ 6}** Upon review of the record, we concur in the board's findings of misconduct and its recommended sanction. Respondent is, therefore, suspended from the practice of law in Ohio for one year; however, this suspension period is suspended and he is placed on a two-year probation period, provided that during this period no disciplinary complaints against respondent are certified to the board by a probable cause panel and that respondent meets regularly with an attorney appointed by relator to supervise his compliance with the Disciplinary Rules. Costs taxed to respondent.

*Judgment accordingly.*

DOUGLAS, RESNICK, F.E. SWEENEY and PFEIFER, JJ., concur.

MOYER, C.J., WRIGHT and COOK, JJ., dissent.

———————————

**COOK, J., dissenting.**

**{¶ 7}** I respectfully dissent. Respondent's breach of his client's trust by loaning himself $3,000 from the client's funds, then lying when questioned by the client, and still failing to conclude the transaction until the client filed a grievance, warrants a full one-year suspension from the privilege of practicing our profession.

MOYER, C.J., and WRIGHT, J., concur in the foregoing dissenting opinion.

———————————